IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

JANE Z. CAO, ET AL,

      Plaintiffs,

v

U.S. SECRET SERVICE, ET AL,

      Defendants.

_____/

HON. ROBERT HOLMES BELL
U.S. DISTRICT COURT JUDGE

CASE NO. 1:03 CV 0289

03 AUG 21  PM 2: 07

RONA _____ ___ __ _CLERK
WEST __ _ _____ _CT OF MICH

BY _____

---

Jane Z. Cao, Pro Per
7192 Bridlewood Circle
Portage, MI  49024
(269) 321-0084

Patrick A. Aseltyne (P23293)
Jason D. Kolkema (P55936)
JOHNSON, ROSATI, LABARGE, ASELTYNE & FIELD, P.C.
Attorneys for Defs. KALAMAZOO COUNTY
 SHERIFF'S DEPT., JOHNSON, JAKO, GREGART
 and KLEIN
303 S. Waverly Road
Lansing, MI  48917
(517) 886-3800

William Vogelzang, Jr. (P29231)
KLUCZYNSKI, GRITZ & VOGELZANG
Attorneys for CARLSON and DAWSON
648 Monroe, N.W., Ste. 400
Grand Rapids, MI  49503
(616) 459-0556

Mark E. Donnelly (P39281)
MICHIGAN DEPT. OF ATTORNEY GENERAL,
 PUBLIC EMPLOYMENT, ELECTIONS & TORT DEFENSE DIVISION
Attorneys for SMITH, ERICKSON and HAIN
P.O. Box 30736
Lansing, MI  48909
(517) 373-6434

**BRIEF IN SUPPORT OF DEFENDANTS, PORTAGE POLICE DEPARTMENT, JACK BOGEMA, MICHELE KOZMINSKE, GREGORY BURKE AND MATTHEW SCOTT BARKLEY'S MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT**

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C
1939 M-72 EAST   WILLIAMSBURG, MI 49690   TELEPHONE (231) 938-2888   TELEFAX (231) 938-3988

Allan C. VanderLaan (P33893)
Bradley D. Wierda (P63811)
CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.
Attorneys for Def. PORTAGE POLICE DEPT., BOGEMA,
 KOZMINSKE, BURKE and BARKLEY
2851 Charlevoix Drive, S.E., Ste. 327
Grand Rapids, MI  49546
(616) 975-7470

_____/

# TABLE OF CONTENTS

**PAGE**

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, iii, iv, v

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Law and Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

B.    As a Matter of Law, Plaintiff Cannot Maintain Her Claims Pursuant to 18 USC §§ 241 and 242 because Said Statutes are a Part of the Criminal Code and Do Not Provide the Basis for a Civil Cause of Action . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

C.    As a Matter of Law, Plaintiff Cannot Maintain Her Claims Pursuant to 18 USC §§ 1111, 1117 and 1201 because Said Statutes are a Part of the Criminal Code and Do Not Provide the Basis for a Civil Cause of Action . . . . . . . . . . . . . . . . . . . . . . . . . 5

D.    As a Matter of Law, Plaintiff Cannot Maintain Her Claims Pursuant to 42 USC §1981 Because There is No Allegation That Plaintiff's Rights Were Impaired Based Upon His Race . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

E.    As a Matter of Law, Plaintiff Cannot Maintain Her Constitutional Claims as the Constitutional Amendments do not Create a Direct Cause of Action . . . . . . . . . . . 6

    1.    Plaintiff Cannot Maintain a Claim Pursuant to the Second Amendment Because There is No Individual Right to Bear Arms . . . . . . . . . . . . . . . . . . . . . 7

    2.    Plaintiff Cannot Maintain a Claim Pursuant to the Fifth Amendment Because That Claim is Redundant to her Fourteenth Amendment Claim . . . . . . . . . 7, 8

    3.    Plaintiff Cannot Maintain a Claim Pursuant to the Fourth Amendment Because Defendants are Shielded by Qualified Immunity . . . . . . . . . . . . . . . . . . 8

        a.    Warrantless Entry . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10
        b.    Excessive Force . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

    4.    Plaintiff Cannot Maintain a Claim Pursuant to the Fourteenth Amendment Because Defendants Alleged Conduct Does Not "Shock the Conscience"11, 12, 13

F.    As a Matter of Law, Plaintiff Cannot Maintain her Claim Against the Portage Police Department Because it is Not a Legal Entity with the Capacity to Sue or Be Sued . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 15, 16

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

i

## INDEX OF AUTHORITIES

**Federal Cases:**                                              **PAGE**

Agnew v Compton,
  239 F.2d 226, 230 (9th Cir. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Anderson v Creighton,
  483 U.S. 635, 639, 97 L.Ed.2d 523, 107 S.Ct. 3034 (1987) . . . . . . . . . . . . . . . . . 8

Artis v Francis Howell North Booster Assn.,
  161 F3d 1178 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bellamy v Bradley,
  729 F2d 416, 418 (6th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bivens v Six Unknown Named Agents of Federal Bureau of Narcotics,
  403 US 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) . . . . . . . . . . . . . . . . . . . . . . 6

Blackburn v Fisk University,
  446 F2d 121 (6th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Celotex Corp. v Catrett,
  477 U.S. 317, 322-3; 106 S.Ct. 2548; 91 L.Ed.2d 265 (1986) . . . . . . . . . . . . . . . . 4

Christophel v Kukulinsky,
  61 F.3d 479, 484 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

County of Sacramento v Lewis,
  523 US 833, 846; 118 S.Ct. 1708; 140 L.Ed.2d 1043 (1998) . . . . . . . . . . . . . . . . 12

Criss v City of Kent,
  867 F.2d 259, 261 (6th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Dennis v County of Fairfax,
  55 F3d 151, 156, fn. 1 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Dickerson v McClellan,
  101 F.3d 1151, 1158 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Evans v City of Houston,
  246 F3d 344, 358 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Ewolski v City of Brunswick et al,
  287 F.3d 492, 501 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 12

Farmer v Brennan,
  511 US 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) . . . . . . . . . . . . . . . . . 12

Galas v McKee,
    801 F.2d 200, 202 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Gillespie v City of Indianapolis,
    185 F.3d 693 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Graham v Connor, et al
    490 US 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) . . . . . . . . . . . . . . . . 11

Hancock v Dodson,
    958 F.2d 1367, 1375 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Harlow v Fitzgerald,
    457 US 800, 818; 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) . . . . . . . . . . . . . . . . . 8

Haverstick Enterprises, Inc. et al v Financial Federal Credit, Inc. et al,
    32 F.3d 989, 992 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hayes v Jefferson County,
    668 F2d 869, 872-74 (6th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Hickman v Block,
    81 F.3d 98, 102 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Jett v Dallas Independent Sch. Dist.,
    491 US 701, 735-36, 109 S.Ct. 2702, 15 L.Ed.2d 598 (1989) . . . . . . . . . . . . . . 14

Love v Pepersack,
    47 F3d 120, 123 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Matsushita Electric Industrial Co, Ltd. v Zenith Radio Corp.,
    475 U.S. 574, 587-8; 106 S.Ct. 1348; 89 L.Ed.2d 538 (1986) . . . . . . . . . . . . . . 4

Michigan v Chesternut,
    486 US 567, 573; 108 S.Ct. 1975; 100 L.Ed.2d 565 (1988) . . . . . . . . . . . . . . . 10

Monell v Department of Social Services,
    436 US 568, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) . . . . . . . . . . . . . . . . . . . . 14, 15

Mooney v City of Holland et al,
    490 F.Supp 188, 190 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Nordyke v King,
    319 F.3d 1185, 1992 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

O'Brien v City of Grand Rapids,
    23 F.3d 990, 996 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rotolo v Borough of Charleroi,
    532 F2d 920 (3rd Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Russo v City of Cincinnati,
    953 F.2d 1036, 1042 (6th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Saucier v Katz,
    533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) . . . . . . . . . . . . . . . 8

Scott v Clay County,
    205 F.3d 867, 873 n.8 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Smith v Chicago school Reform Bd. of Trustees,
    165 F3d 1142, 1148 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United States v Warin,
    530 F2d 103, 106-7 (5th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VonDardel, et al v Union of Soviet Socialist Republics,
    623 F.Supp 246, 254 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Watson v Devlin,
    167 F.Supp. 638, 640 (E.D. Mich. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Watson v Fraternal Order of Eagles,
    915 F.2d 235, 241 (6th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Willing v Lake Orion Community Schools Board of Trustees et al,
    924 F.Supp 815, 818 (E.D. Mich. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Federal Statutes:**

18 USC § 1111. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

18 USC § 1117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

18 USC § 1201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

18 USC § 241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5

18 USC § 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5

42 USC § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 14

42 USC § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 15

**Federal Court Rules:**

Fed.R.Civ.P. 12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3, 4

Fed.R.Civ.P. 17(b)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

Fed.R.Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

**BRIEF IN SUPPORT OF DEFENDANTS, PORTAGE POLICE DEPARTMENT, JACK BOGEMA, MICHELE KOZMINSKE, GREGORY BURKE AND MATTHEW SCOTT BARKLEY'S MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

This case arises out of an incident on May 2, 2001 wherein Xianqing Cao became involved in a shoot-out with police officers and was shot and killed. On that date, Mr. Cao was accused of sexually abusing his step-daughters and a court order was issued to remove his children from the home. After initially cooperating with Family Independence Agency (hereinafter "FIA") employees and the police, Mr. Cao became enraged, forcing them out of his home and locking the doors. When he refused to let them reenter, the police broke into his home and Mr. Cao initiated a shoot-out during which a police officer was shot three times and Mr. Cao was shot and killed.

The Plaintiff, the former wife of Mr. Cao, filed a Complaint in Pro Per against numerous Defendants. Included among the Defendants are the Portage Police Department, Sergeant Jack Bogema, Detective Michele Kozminske, Officer Gregory Burke and Officer Matthew Barkley. The Complaint contains the following ten counts: 1) 18 USC §1111 - Murder; 2) 18 USC §1117 - Conspiracy to Murder; 3) 18 USC §1201 - Kidnapping; 4) 18 USC §241 - Conspiracy against Rights; 5) 18 USC §242 - Deprivation of Rights under Color of Law; 6) 42 USC §1981 - Equal Rights under the Law; 7) Fourth Amendment - Search and Seizure; 8) Fifth Amendment - Rights or Persons; 9) Fourteenth Amendment - Rights Guaranteed; 10) Second Amendment - Bearing Arms. For the reasons set forth below, the Defendants respectfully requests that the Plaintiff's Complaint be dismissed pursuant to Federal Rules of Civil Procedure (hereinafter "FRCP") Rule 12(c) or, alternatively, that Summary Judgment enter on their behalf pursuant to FRCP Rule 56.

1

## II.    STATEMENT OF FACTS

On May 2, 2001, Detective Michele Kozminske of the Portage Police Department was advised to proceed to Amberly Elementary School to assist FIA employees with a complaint for alleged sexual abuse. *Plaintiff's Complaint, ¶s 219, 235.* The Plaintiff's daughter, Elena Cao, alleged that her step-father, Xianqing Cao, had touched her inappropriately. *Id. at ¶ 217.*

Detective Kozminske and the FIA employees then proceeded to the Plaintiff's residence to further investigate the allegations. *Id. at ¶ 243.* Mr. Cao came to the door and allowed the FIA employees to speak with another daughter, Margaret Cao. *Id. at ¶s 245, 247.* He then contacted his wife who returned home from work. *Id. at ¶s 248, 250, 253.*

After speaking with Margaret Cao, the FIA employees contacted the Juvenile Court, obtained a court order to remove all four of the Plaintiff's children from their home and advised Mrs. Cao that the children were going to be removed. *Id. at ¶s 284, 292.* Mrs. Cao told her husband that the children were going to be removed and her husband replied that "it was not acceptable to allow these strangers to take away the children especially the two babies" and that they "would never see the children again if they were taken away." *Id. at ¶s 298, 299.*

As Detective Kozminske and the FIA employees started to remove the children, Mr. Cao became enraged, started striking the walls and yelling and took the infant away from one of the workers. *Id at ¶s 308, 311, 315, 316; Affidavit of Detective Kozminske attached hereto as Exhibit A.* Mr. Cao stated: "If we let them took away our kids, we would never see our children again.... I would fight not to let them take away the children." *Plaintiff's Complaint, ¶ 321.* Detective Kozminske had exited the house and the FIA employee fled after being threatened by Mr. Cao. *Id. at ¶ 318.* Mrs. Cao took the four children upstairs where she stayed for the remainder of the encounter and the doors of the home were locked. *Id. at ¶ 324; Ex. A.* Mrs. Cao was observed closing the windows and shades in the upstairs bedroom. *Ex. A.*

Sergeant Bogema and Officer Burke, also of the Portage Police Department, responded to the scene to assist. *Plaintiff's Complaint, ¶ 335.* Sergeant Bogema and Officer Burke gave repeated orders to Mr. Cao to open the door, but he refused to do so. *Ex. A.* Fearing for the safety of the children, Detective Kozminske determined that forced entry should be made into the home. *Id.* Her fear for the safety of the children was based on numerous factors including: Mr. Cao forcing the FIA employees and police from the home and locking the doors; his forceful resistance of the court order to remove the children and irrational and aggressive behavior; the fact that he had just been informed that he was accused of sexually abusing his children and that the children were to be removed from his home; and the fact that Mr. Cao was moving in and out of view and Mrs. Cao had been seen closing the windows and window shades. *Id.*

Officer Burke broke a glass door and entered the home. *Affidavit of Officer Burke attached hereto as Exhibit B.* As he did so, Mr. Cao confronted him with a gun and shot at him several times. *Id.* Officer Burke began to retreat from the home and was shot three times. *Id.* Officer Burke and Sergeant Bogema returned fire and shot Mr. Cao. *Id.*

Detective Kozminske then went upstairs and removed the four children from the home and escorted Mrs. Cao to the rear of a patrol car. *Plaintiff's Complaint, ¶s 395, 398-99.* The Plaintiff alleges that Detective Kozminske aimed a gun at her when she first entered the upstairs room. *Id. at ¶ 395.* After being placed in the rear of the patrol car, Mrs. Cao was informed that her husband and a police officer had been injured in the shoot-out downstairs. *Id. at ¶ 399.*

## III.    ARGUMENT

### A.    <u>Standard of Review.</u>

Federal Rules of Civil Procedure (hereinafter "FRCP") Rule 12(c) provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the

pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.

Federal Rules of Civil Procedure Rule 56(c) provides that: "the [summary] judgment sought shall be rendered forthwith if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Reasonable inferences drawn from the evidence must be viewed in the light most favorable to a party opposing a motion for summary judgment. Matsushita Electric Industrial Co., Ltd. v Zenith Radio Corp., 475 U.S. 574, 587-8; 106 S.Ct. 1348; 89 L.Ed.2d 538 (1986). However, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. [citation omitted]. Summary Judgment must be entered against a party who failed to provide sufficient evidence in support of an essential element of that party's case. Celotex Corp. v Catrett, 477 U.S. 317, 322-3; 106 S.Ct. 2548; 91 L.Ed.2d 265 (1986).

**B.** **As a Matter of Law, Plaintiff Cannot Maintain Her Claims Pursuant to 18 USC §§ 241 and 242 because Said Statutes are a Part of the Criminal Code and Do Not Provide the Basis for a Civil Cause of Action.**

Counts IV and V of Plaintiff's Complaint allege violations of 18 USC §§ 241 and 242. In pertinent part, 18 USC §241 provides criminal penalties for conspiracies "to injure, oppress, threaten, or intimidate any person... in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States...." In pertinent part, 18 USC §242 likewise provides criminal penalties for a person who "willfully subjects any person... to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution

4

or laws of the United States... on account of such person being an alien, or by reason of his color, or race...."

18 USC §§ 241 and 242 are part of the federal criminal code.  Neither statute contains a provision authorizing a civil cause of action and it is well settled that neither statute provides the basis for a civil action.  Willing v Lake Orion Community Schools Board of Trustees et al., 924 F.Supp. 815, 818 (E.D. Mich. 1996) ("Willing's claim under 18 U.S.C. §241 should be dismissed, because the law is clear that §241 does not provide a basis for a civil liability.") citing, Watson v Devlin, 167 F.Supp. 638, 640 (E.D. Mich. 1958) ("These sections [18 USC §§ 241 and 242] are part of the criminal code and civil relief is not afforded by them."), aff'd, 268 F.2d 211 (6th Cir. 1959); Agnew v Compton, 239 F.2d 226, 230 (9thCir. 1956), cert. denied, 353 U.S. 959.  Accordingly, as a matter of law, Counts IV and V of Plaintiff's Complaint should be dismissed.

### C.    As a Matter of Law, Plaintiff Cannot Maintain Her Claims Pursuant to 18 USC §§ 1111, 1117 and 1201 because Said Statutes are a Part of the Criminal Code and Do Not Provide the Basis for a Civil Cause of Action.

Counts I, II and III of Plaintiff's Complaint allege violations of 18 USC §§ 1111, 1117 and 1201.  These sections are the federal criminal code provisions for murder, conspiracy to murder and kidnapping, respectively.  As with the portions of the criminal code set forth above, these statutes likewise provide for criminal penalties but do not provide the basis for civil liability.[1]  Accordingly, as a matter of law, Counts I, II and III of Plaintiff's Complaint should also be dismissed.

5

---

[1]A civil cause of action to protect diplomats has been implied from several statutes including 18 USC §1201 (Kidnapping) based on its longstanding recognition at common law.  See VonDardel et al. v Union of Soviet Socialist Republics, 623 F.Supp. 246, 254 (1985).  It is not relevant to this case.

**D.** **As a Matter of Law, Plaintiff Cannot Maintain Her Claims Pursuant to 42 USC §1981 Because There is No Allegation That Plaintiff's Rights Were Impaired Based Upon His Race.**

Count VI of Plaintiff's Complaint alleges a violation of 42 USC §1981. "Congress enacted §1981 pursuant to the Thirteenth Amendment... to ensure that all of the badges and incidents of slavery faded into an ignominious past." Watson v Fraternal Order of Eagles, 915 F.2d 235, 241 (6th Cir. 1990).

In spite of the length of the Plaintiff's Complaint, it is not clear what the Plaintiff's allegations are concerning how 42 USC §1981 was violated. What is clear from her Complaint is that there is no allegation in the pleadings that Mr. Cao's rights were impaired as compared to the rights "enjoyed by white citizens." While the Plaintiff alleges that Mr. Cao was not fluent in English, she does not allege that Mr. Cao's rights were impaired because of any racially motivated actions. Accordingly, as a matter of law, Count VI of Plaintiff's Complaint should be dismissed.

**E.** **As a Matter of Law, Plaintiff Cannot Maintain her Constitutional Claims as the Constitutional Amendments do not Create a Direct Cause of Action.**

The Plaintiff's Complaint does not reference 42 USC §1983 or contain any allegation that the City Defendants were acting "under color of state law." In the absence of reliance on 42 USC §1983, the Plaintiff cannot proceed with her claims alleging constitutional violations. See e.g., Bivens v Six Unknown Named Agents of Federal Bureau of Narcotics, 403 US 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). While the Constitutional Amendments create rights, they do not create a means by which claims alleging violations of those rights can be instituted. The Plaintiff may seek to cure this defect by amending her Complaint, however, this Court should not permit her to amend as the Plaintiff could not maintain her Constitutional claims even if allowed to amend for the reasons set forth below.

6

1.    **Plaintiff Cannot Maintain a Claim Pursuant to the Second Amendment Because There is No Individual Right to Bear Arms.**

The Second Amendment right to bear arms has not been incorporated into the Fourteen Amendment.   See e.g., Love v Pepersack, 47 F.3d 120, 123 (4th Cir. 1995) ("[t]he Second Amendment does not apply to the states").   Moreover, the Sixth Circuit is among the majority of federal circuits that have adopted the "state's right" or "collective rights" interpretation of the right to bear arms.   Under this model, there is no individual right conferred under the Second Amendment; rather, the Second Amendment merely recognizes the right of a state to arm its militia.   See United States v Warin, 530 F.2d 103, 106-7 (5th Cir. 1976) ("we conclude that the defendant has no private right to keep and bear arms under the Second Amendment"); Hickman v Block, 81 F.3d 98, 102 (9th Cir. 1996) ("[b]cause the Second Amendment guarantees the right of the states to maintain armed militia, the states alone stand in the position to show legal injury when the right is infringed."); Gillespie v City of Indianapolis, 185 F.3d 693 (7th Cir. 1999). Accordingly, individuals lack standing to raise a Second Amendment challenge to state action and the Plaintiff could not maintain such a claim even if allowed to amend her Complaint.   See e.g., Nordyke v King, 319 F.3d 1185, 1992 (9th Cir. 2003).

2.    **Plaintiff Cannot Maintain a Claim Pursuant to the Fifth Amendment Because that Claim is Redundant to her Fourteenth Amendment Claim.**

Unlike the Plaintiff's Second Amendment claim, the Fifth Amendment has been made applicable to the states.   However, the appropriate claim for an alleged violation of an individual's Fifth Amendment rights is an action under the Fourteenth Amendment. Consequently, Count VIII of Plaintiff's Complaint should be dismissed for the reason that it is redundant to the Fourteenth Amendment claim under Count IX.   See Scott v Clay County, 205

7

F.3d 867, 873 n.8 (6th Cir. 2000) ("the instant complainant's citation to the Fifth Amendment Due Process Clause was a nullity, and redundant of her invocation of the Fourteenth Amendment Due Process Clause.").

### 3. Plaintiff Cannot Maintain a Claim Pursuant to the Fourth Amendment Because Defendants are Shielded by Qualified Immunity.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v Fitzgerald, 457 US 800, 818; 102 S.Ct. 2727; 73 L.Ed.2d 396 (1982). The United States Supreme Court has clearly stated that in litigation against government officials, the threshold question of qualified immunity should be resolved prior to discovery. Id. Furthermore, issues that would be dispositive of the qualified immunity issue are to be resolved prior to discovery as well. Criss v City of Kent, 867 F.2d 259, 261 (6th Cir. 1988).

> Qualified immunity involves a two-step inquiry. First, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. If the court finds a constitutional violation, it must then consider whether the violation involved "'clearly established constitutional rights of which a reasonable person would have known.'" Dickerson v McClellan, 101 F.3d 1151, 1158 (6th Cir. 1996) (quoting Christophel v Kukulinsky, 61 F.3d 479, 484 (6th Cir. 1995)); see also Saucier v Katz, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Russo v City of Cincinnati, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting Anderson v Creighton, 483 U.S. 635, 639, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987)). "Although it need not be the case that 'the very action in question has been previously held unlawful,... in light of pre-existing law, the unlawfulness must be apparent.'" Id. (quoting Anderson, 483 U.S. at 640). Whether qualified immunity is applicable to an official's actions is a question of law.... See Dickerson, 101 F.3d at 1157.

Ewolski v City of Brunswick et al., 287 F.3d 492, 501 (6th Cir. 2002).

8

a.    **Warrantless Entry.**

The first alleged violation of the Fourth Amendment was the breaking of the glass door and entry into the residence without a warrant.  Although a warrantless entry into a home is presumptively unconstitutional, the entry in this case was permitted because "exigent circumstances" existed.  O'Brien v City of Grand Rapids, 23 F.3d 990, 996 (6th Cir. 1994); Hancock v Dodson, 958 F.2d 1367, 1375 (6th Cir. 1992).

"The relevant inquiry is whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed."  Ewolski 287 F.3d at 501, citing, Dickerson, 101 F.3d at 1158.  In this case, as a matter of law, exigent circumstances existed.

At the time of the forced entry, Mr. Cao had just forced the social workers and one police officer out of his home and locked the door.  He had forcefully resisted their authorized removal of the children and, after initially cooperating with their investigation, had become enraged and acted irrationally in striking the walls and yelling.  The police officers were further aware that Mr. Cao had been informed a short time earlier that his step-daughters were accusing him of ongoing sexual abuse and that all four of his children were to be removed from his home.  Moreover, after locking the authorities out of the house, Mrs. Cao had been observed closing the windows and shades of the upstairs windows where the children had been taken.

All of these factors compel the conclusion that the reasonable police officer could reasonably believe that exigent circumstances existed.  Moreover, the courts have emphasized the potential danger to innocent persons in the house and the possibility of hostages as an important factor in finding exigent circumstances.  See Ewolski, 287 F.3d at 502-3; Dickerson, 101 F.3d at 1160.  In this case, there were four innocent children locked in the house and Mr. Cao had shown a willingness to harm the children through sexual abuse.

9

In addition to the existence of exigent circumstances, the police officers in this case were advised by the social workers that the court had ordered that all four children were to be removed from the home.  Accordingly, the existence of the court order to take custody of the children is analogous to the existence of an arrest warrant and the police officers acted appropriately in making a forced entry to effectuate the court order to remove the children from the home.

**b.     Excessive Force.**

Although unclear from Plaintiff's Complaint, arguably the Plaintiff may also allege that her husband's Fourth Amendment rights were violated by the police officer's alleged use of excessive force.  In order to maintain such a claim, the Plaintiff initially must prove that a seizure occurred.  See Galas v McKee, 801 F.2d 200, 202 (6th Cir. 1986).  A seizure occurs when a police officer restrains the liberty of a person such that the person believes that he is not free to leave.  Michigan v Chesternut, 486 US 567, 573; 108 S.Ct. 1975; 100 L.Ed.2d 565 (1988).  In this case, the police officers were attempting to remove the children and were not restricting Mr. Cao's ability to leave.  Accordingly, if a seizure occurred at all, it was only when Mr. Cao was shot by the police officers.

Assuming that a seizure occurred at that time, the officer's use of deadly force was not unreasonable.

> The determination of whether force used to effect a seizure was unreasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.  The test is objective; it asks whether a reasonable officer would conclude that the level of force used was appropriate.  See id. at 396-97.

Ewolski, 287 F.3d at 507-8.

10

In this case, the undisputed evidence is that Mr. Cao shot at the officers and that he was killed when the officers returned fire. Mr. Cao posed an immediate threat to the safety of the police officers and, in fact, shot Officer Burke three times. Under the standard established by the courts as well as under the police procedures, the police officers used appropriate force in this case.

As set forth above, it is undisputed that Mr. Cao shot at the officers and that he was killed when the officers returned fire. During this entire exchange, Mrs. Cao was upstairs and, accordingly, she did not witness the gunfight. Mrs. Cao has not introduced any admissible evidence to support her unfounded allegations that her husband did not fire any shots.

### 4. Plaintiff Cannot Maintain a Claim Pursuant to the Fourteenth Amendment Because Defendants Alleged Conduct Does Not "Shock the Conscience."

Plaintiff's final claim is for violation of the Fourteenth Amendment. While Plaintiff's Complaint is again silent as to the nature of the violation alleged, presumably Plaintiff is alleging a violation of Substantive Due Process. As any claim that Mr. Cao was subject to excessive force must be analyzed under the Fourth Amendment, Defendants construe Plaintiff's Complaint as alleging that Mrs. Cao's liberty was restrained after the shoot out with her husband. Graham v Connor et al., 490 US 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In that respect, Plaintiff's allegations are as follows:

395.    After the 6 gunshots heard, Jane Cao with her four children upstairs experienced complete silence for a few seconds. Suddenly, Kozminski appeared upstairs with a handgun in her hand pointing to Jane Cao's forehead.

396.    Kosminski [sic] used both hands holding her gun, and stared at Jane Cao and the children for a moment.

. . .

398.    Kozminski grabbed away Alexander from Jane Cao's arms; Kozminski used her other hand dragged [sic] Jane Cao to the downstairs, out of the front door, and to the driveway.

11

399. Kozminski refused Jane Cao to see Xianquing Cao, and kept Jane Cao in the police car of Officer Patricia Nichols, parked in front of Brundirks house. In the presence of Nichols, Kozminski told Jane Cao that Xianquing Cao was allegedly shooting at her and another officer; and both of them returned fire; and the other officer was injured; and Xianquing Cao was injured also.

400. Held in the police car, Jane Cao repeated asking information about Xianquing Cao's injure [sic], but both Kozminski and Nichols refused to tell her.

Plaintiff's Complaint, p. 103.

In order to maintain such a claim, Plaintiff must demonstrate that the Defendants acted with the requisite culpability, that is, that the challenged action was so "egregious" that it was "arbitrary in the constitutional sense." County of Sacramento v Lewis, 523 US 833, 846; 118 S.Ct. 1708; 140 L.Ed.2d 1043 (1998). In further defining this standard, the Supreme Court has indicated that the Fourteenth Amendment protects only against abuse of power which "shocks the conscience." Id.

Where a police officer is faced with "unforeseen circumstances" that demand his "instant judgment", a Fourteenth Amendment violation occurs only if the officer acts with malice and an "intent to harm." County of Sacramento v Lewis, 523 US at 853, 854. Where a police officer has enough time to fully consider the potential consequences of his conduct, the more appropriate standard of review is "deliberate indifference." Ewolski, 287 F.3d at 510-11. Deliberate indifference requires a Plaintiff to prove that a police officer knew of and disregarded an excessive risk to the Plaintiff's health or safety. Farmer v Brennan, 511 US 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In this case, Detective Kozminske was faced with an emergency situation and, accordingly, the Plaintiff must show that she acted with malice and intent to harm. A shoot out had just occurred during which a police officer and civilian had both been shot and there were

12

legitimate concerns that the children may have been in danger. Even if it could be said that Detective Kozminske acted negligently, which the Defendants expressly deny, her conduct in pointing a gun at Mrs. Cao and escorting her to a patrol car clearly do not demonstrate any malice or intent to harm Mrs. Cao.

Moreover, even if this Court concluded that the appropriate standard of review was deliberate indifference, Detective Kozminske, as a matter of law, was not deliberately indifferent. In fact, not only has the Plaintiff not produced any evidence to show that Detective Kozminske was aware of and ignored an excessive risk to Mrs. Cao's safety, Mrs. Cao does not even allege that her health was negatively affected.

With respect to Sergeant Bogema, Officer Burke and Officer Barkley, the Plaintiff cannot maintain a claim under the Fourteenth Amendment because she had no contact with them and has not pleaded any allegations that they restricted her liberty in any way.

F. **As a Matter of Law, Plaintiff Cannot Maintain her Claim Against the Portage Police Department Because it is Not a Legal Entity with the Capacity to Sue or Be Sued.**

Plaintiff's Complaint asserts claims against the Portage Police Department. It is well settled in Michigan that a city police department is not a legal entity and, therefore, does not have the capacity to sue or be sued. Haverstick Enterprises, Inc. et al. v Financial Federal Credit, Inc. et al., 32 F.3d 989, 992 (6th Cir. 1994); Mooney v City of Holland et al., 490 F.Supp. 188, 190 (1980).

Federal Rules of Civil Procedure Rule 17(b) states the following with respect to the capacity of a party to sue or be sued:

> The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held....

As set forth above, it is undisputed in Michigan that the Portage Police Department does not have the capacity to be sued and, therefore, the Plaintiff cannot maintain her claims against it.

Additionally, even if properly plead, Plaintiff could not maintain a claim against the municipal defendant because Plaintiff has not alleged and cannot prove that the Defendants were acting pursuant to a policy or custom. The starting point in reviewing a governmental entity's potential liability under 42 USC §§ 1981 and 1983[2] is the Supreme Court's decision in <u>Monell</u> v <u>Department of Social Services</u>, 436 US 568, 98 S Ct 2018, 56 L Ed 2d 611 (1978). In <u>Monell</u>, the Court held that local government units may not be held liable under § 1983 on a respondeat superior theory. Rather, the entity may only be held liable when "action pursuant to official municipal policy of some nature causes a constitutional tort." <u>Id</u>. 436 US at 691. In this regard, the Court summarized its holding as follows:

> We conclude, therefore, that a local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. Instead, **it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983.**

<u>Id</u>. at 694-95 (emphasis added).

Similarly, the <u>Monell</u> holding has been carried over in the application of §1981. See <u>Jett</u> v <u>Dallas Independent Sch. Dist.</u>, 491 US 701, 735-36, 109 S Ct 2702, 105 L Ed 2d 598 (1989)(stating that "to prevail on his claim against the school district, [the plaintiff] must show that the violation of his 'right to make contracts' protected by §1981 was caused by a custom or policy within the meaning of <u>Monell</u> and subsequent cases"). Although portions of the <u>Jett</u>

14

---

[2]As previously noted, the Plaintiff's Complaint has not specifically asserted a cause of action pursuant to § 1983, which is the vehicle for vindicating the federal rights elsewhere conferred by the United States Constitution and federal statutes.

holding have been abrogated by the Civil Rights Act of 1991, which added subsection (c) to § 1981, the weight of federal court authority holds that the § 1981(c) was not intended to authorize the imposition of respondeat superior liability against municipalities.  See <u>Dennis</u> v <u>County of Fairfax</u>, 55 F3d 151, 156, fn. 1 (4th Cir. 1995)("subsection (c) did not purport to overrule <u>Jett</u>'s holding with respect to municipal liability.")' <u>Evans</u> v <u>City of Houston</u>, 246 F3d 344, 358 (5th Cir. 2001)("Although the court of appeals diverge regarding the exclusivity of the remedy of § 1983, they remain united as to <u>Monell</u>'s custom or policy requirement.")' <u>Smith</u> v <u>Chicago School Reform Bd. of Trustees</u>, 165 F3d 1142, 1148 (7th Cir. 1999) ("recovery against a governmental body under § 1981 may not be based on respondeat superior."); <u>Artis</u> v <u>Francis Howell North Booster Assn.</u>, 161 F3d 1178 (8th Cir. 1998).

Following <u>Monell</u>, the federal courts have consistently dismissed § 1983 actions against governmental agencies when the plaintiff is unable to show that supervisory personnel - meaning the lawmakers or those whose edicts or acts may fairly be said to represent official policy - "authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."  <u>Hayes</u> v <u>Jefferson County</u>, 668 F2d 869, 872-74 (6th Cir. 1982); <u>Bellamy</u> v <u>Braldey</u>, 729 F2d 416, 418 (6th Cir. 1984).   In other words, a plaintiff must show an "affirmative link between the occurrence of the various incidents of police misconduct and the adoption of any plan or policy by the municipality - expressed or otherwise - showing their authorization or approval of such misconduct." <u>Hayes</u>, at 874.  Additionally, in order to survive a dispositive motion a plaintiff must present specific facts in support of the claim that the governmental employees were acting pursuant to a policy or custom instituted by the governmental agency.  Conclusory allegations unsupported by facts are insufficient to state a claim of action under § 1983.  See <u>Blackburn</u> v <u>Fisk University</u>, 446 F2d 121 (6th Cir. 1971); <u>Rotolo</u> v <u>Borough of Charleroi</u>, 532 F2d 920 (3rd Cir. 1976).

15

Here, the Plaintiff has failed to state a valid claim for the reason that she has not alleged that the individual City Defendants acted pursuant to a policy or custom. Moreover, the Plaintiff simply cannot show that the City Defendant adopted an unconstitutional policy or procedure. Therefore, this Court should conclude that the Plaintiff's Complaint fails as a matter of law.

## IV.    CONCLUSION

For the reasons set forth above, the Plaintiff's Complaint as pertains to the City Defendants should be dismissed in its entirety or, alternatively, Summary Disposition should enter in their behalf.

Dated: August 20 , 2003

CUMMINGS, McCLOREY, DAVIS
& ACHO, P.L.C.

Allan C. VanderLaan (P33893)
Bradley D. Wierda (P63811)
Attorneys for Defs. PORTAGE POLICE DEPT.,
BOGEMA, KOZMINSKE, BURKE and BARKLEY

/home/sys/data/wpdata/portage police dept/pleadings/Brief 4 M 2 Dismiss & M 4 SD 07-31-03

16