**3**

UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

**JANE Z. CAO,**
as Personal Representative of the Estate of
**XIANQING CAO**, deceased; and
**JANE Z. CAO**, in her individual,

       *Plaintiffs,*

v.

**U.S. SECRET SERVICE,**
et al.,

       *Defendants.*

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:03-CV-289

Honorable Robert Holmes Bell

---

Jane Z. Cao
Plaintiffs in Pro Se
7192 Bridlewood Circle
Portage, MI 49024
(269) 321-0084

**Allan C. Vander Laan** (P33893)
Cummings, McClorey, Davis & Acho, P.L.C.
Attorney for Defendants Portage Police Department,
Jack Bogema, Michelle Kosminski, Gregory Burke,
and Matthew Scott Barkley
2851 Charlevoix Drive, S.E., Suite 327
Grand Rapids, MI 49546
(616) 975-7470

**William Vogelzang, Jr.** (P29231)
**Robert F. Mirque, Jr.** (P47391)
Kluczynski, Girtz & Vogelzang
Attorneys for Defendants Cheryl Carlson and Beth Dawson
648 Monroe, N.W., Suite 400
Grand Rapids, MI 49503
(616) 459-0556

**Patrick A. Aseltyne** (P23293)
**Jason D. Kolkema** (P55936)
Johnson, Rosati, LaBarge, Aseltyne &
Field, P.C.
Attorneys for Defendants Kalamazoo
Sheriff's Department, Marty Johnson,
Ken Jako, James Gregart, and Carrie
Klein
303 S. Waverly Road
Lansing, MI 48917
(517) 886-3800

**Mark E. Donnelly** (P39281)
Michigan Department of Attorney General,
    Public Employment, Elections & Tort
    Defense Division
Attorney for Defendants Kalamazoo County
FIA, Don Smith, Nicole Erickson, and Heather
Hain
P.O. Box 30736
Lansing, MI 48909
(517) 373-6434

---

## COUNTERAFFIDAVIT of the PLAINTIFFS
### An Affidavit Made to Contradict and Oppose
### "Affidavit of Kozminske" and "Affidavit of Gregory Burke"

EXHIBIT
#3

1

NOW COMES JANE Z. CAO, who being duly sworn upon her oath, deposes and says as follows:

1. That I am fully competent to give testimony under oath in the above-captioned matter, and that all of the matter herein after set forth is based upon my personal knowledge, facts, factual information, and in good faith.

2. Portage police detective MICHELLE KOZMINSKE filed in court her affidavit "AFFIDAVIT OF KOZMINSKE" dated August 12, 2003 as "EXHIBIT A" for the "DEFENDANTS, PORTAGE POLICE DEPARTMENT, JACK BOGEMA, MICHELLE KOSMINSKE, GREGORY BURKE AND MATTHEW SCOTT BARKLEY'S MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT" dated August 20, 2003.

3. Portage police officer GREGORY BURKE filed in court his affidavit "AFFIDAVIT OF GREGORY BURKE" dated August 5, 2003 as "EXHIBIT B" for the "DEFENDANTS, PORTAGE POLICE DEPARTMENT, JACK BOGEMA, MICHELLE KOSMINSKE, GREGORY BURKE AND MATTHEW SCOTT BARKLEY'S MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT" dated August 20, 2003.

4. Portage detective KOZMINSKE was in disguise to the plaintiffs in her first appearance and during her presence at the CAO premises on May 2, 2001. KOZMINSKE never introduced her name and identity to the plaintiffs, and she was dressed in civilian clothes. Thus her identity as "police" was not established to the Plaintiffs on May 2, 2001, and her testimony of forcing "police from the home and locking the doors" is in contradiction to the fact. This factual contradiction applies to the two FIA employees ERICKSON and HAIN as well since no name and identity was given to the CAO couple.

5. There was no record of court order to remove ALL FOUR Children from BOTH of the parents.

   Refer to the evidence filed in the plaintiffs' complaint #284, page 52-53.

6. Both CAO couple behaved in great dignity for protecting their children and in kind hospitality to KOZMINSKE, ERICKSON, and HAIN by either explaining and communicating with the three women or requesting an English-Chinese translator.

7. The Portage police and the FIA had prior knowledge of Xianqing Cao's language deficiency. But there was no translator for Xianqing Cao on site, and KOZMINSKE did not allow a single minute for Jane Cao to talk with Xianqing Cao for the explanation of the situation.

   Refer to the plaintiffs' complaint #312 & #313, page 58.

2

8. KOZMINSKE had prior knowledge of the arrival of BOGEMA and BURKE at the CAO premises before giving away the CAO infant son. She did not take the infant to "protect children" but to leave the children for her unspeakable plan. KOZMINSKE did not even want the mother JANE CAO to hear the plan of a removal of JANE CAO's own children. Further she immediately instructed BURKE to break the glass door and BURKE executed Xianqing Cao by gunshots that were a great potential to injure and kill the CAO children.

Refer to KOZMINSKE's statement (page 3-4) in the **Kalamazoo County Sheriff's Department Complaint Report Complaint # 01-10035 (Exhibit #1)**:

> "I had been holding infant ALEXANDER when SGT BOGEMA arrived at the scene. CPS worker, NICOLE ERICKSON, who was upstairs with me, notified me that the police had arrived, and one CPS worker was outside. I wanted to brief SGT BOGEMA **without JANE being able to hear of plan a removal of the children**. I turned ALEXANDER over to the CPS worker and exited through the front of the residence to brief SGT BOGEMA."

9. As many evidences and facts documented in the plaintiffs' complaint pointing to the murder of XIANQING CAO, the plaintiffs want to list again the links to the evolvement of KOZMINSKE in the murderous execution of XIANQING CAO:

    9.1.    **"Unknown subject to check on MICHELLE's status"**
           Refer to the plaintiffs' complaint, starting at page 51.

    9.2.    **Kozminski knew what Xianqing Cao said on the phone without translation**
           Refer to the plaintiffs' complaint, starting at page 53.

    9.3.    **Kozminski urged the gunmen to come quickly after successfully forced Xianqing Cao to say "No"**
           Refer to the plaintiffs' complaint, starting at page 59.

    9.4.    **Kozminski knew the gun shooting to happen before happening – A pre-planned plot**
           Refer to the plaintiffs' complaint, starting at page 63.

    9.5.    **Kozminske had prior knowledge of 6 gunshots and counted total of only 6 gunshots before entering the CAO house**
           Refer to the plaintiffs' complaint #350, starting at page 66.

10. A total of six gunshots were fired on May 2, 2001 including the three gunshots from GREGORY BURKE to XIANQING CAO. This fact was supported by:

    10a). The counting of number of gunshots by KOZMINSKE (Refer to 9.5.);

10b). BURKE and BOGEMA fired total of 6 rounds (Refer to Exhibit #1 and the plaintiffs' complaint #346, page 66);

10c). Neighbor Diane Hamlin heard approximately 5 gunshots (Refer to Exhibit #1 and the plaintiffs' complaint #349);

10d). Jane Cao in the upstairs heard total about 6 gunshots.

But GREGORY BURKE gave his testimony in his affidavit that "I began to retreat from the home and was shot three times." This statement is in direct contradiction to the fact of number of gunshots.

11. BURKE alleged that he "was shot three times". Understandably, he meant allegedly one shot to his chest, one shot to his back, and one shot to his upper left leg before he stepped out the CAO eating room through the broken glass door. (Refer to Exhibit #1 also) But,

11a). BURKE did not have any mark on his chest where he felt alleged gunshot; contrarily, he did not feel the alleged gunshot at his upper left leg where a gunshot wound occurred;

11b). BURKE did not want and did not have his leg wound photographed as evidence of his accusation;

11c). BURKE did not state the fact how he aimed at XIANQING CAO's right temple at "contact to close range" to complete the execution of XIANQING CAO.

Refer to the autopsy report of XIANQING CAO and the plaintiffs' complaint pages 71-81.

11d). By BURKE's accusation, there ought to have at least **three** .22 bullet brass cartridges and **two** spent .22 spent bullet in the eating room. But this was denied by the evidences collected in Exhibit #1. In contrary,

11e). A .22 spent bullet was found in the family room in front of fireplace with no .22 brass cartridge documented associating with this .22 spent bullet; a bullet hole was inside the eating room wall near the broken glass door, but there was no brass cartridge documented associating with this bullet hole.

Refer to Exhibit #1 and the plaintiffs' complaint #387 & #388.

12. BURKE was pre-planned and prepared to break the CAO house with a special tool.

Refer to plaintiffs' complaint #341-343.

13. None of the police rang the CAO house doorbell for their desire to enter the CAO home. Instead, the police entered the CAO house with threat and violence and without any due process or court order. From the arrival of BURKE and BOGEMA at the CAO premises to the execution of XIANQING CAO, the total elapsed time was less than 6 minutes!

Refer to Exhibit #1 and the plaintiffs' complaint #334, #345, & #331.

14. A bullet hole was made at the west end of the CAO's eating table. There was no bullet brass cartridge and/or spent bullet documented in Exhibit #1 associating with this bullet hole. But the location of this bullet hole matched the upper left leg wound of BURKE. The shooting direction was directly from the west outside into the CAO eating room. At that time, XIANQING CAO was inside the eating room. The evidence points to BOGEMA who fired only one shot injuring BURKE from the outside. This also explains why BURKE did not want his wound to be photographed for the identification of direction of the shot and the type of bullet.

Refer to Exhibit #1 and the plaintiffs' complaint #351 & #384.

15. Further, ERICKSON outside and in the back of the house stated she saw the officer was shot.

Refer to Exhibit #1 and the plaintiffs' complaint #381.

16. There was no gunshot residual on XIANQING CAO's hand.

Refer to Exhibit #1 and the plaintiffs' complaint #382 & #383.

17. The alleged .22 handgun was not found in the eating room next to XIANQING CAO but was found on a small table in the family room north of the eating room.

Refer to Exhibit #1 and the plaintiffs' complaint #390 & #391.

18. The directions of the three gunshots received by XIANQING CAO were all from **his right to his left**, but BURKE as well as BOGEMA claimed that they were at XIANQING CAO's **left side** when shooting at XIANQING CAO.

5

Refer to the autopsy report of XIANQING CAO, Exhibit #1, and the plaintiffs' complaint #370.

Further, your Affiant sayeth not.

Jane Z. Cai

**JANE Z. CAO**
7192 Bridlewood Circle, Portage, Michigan 49024, USA
Phone No. (269) 321-0084

Subscribed and sworn to before me

this 8th day of September, 2003.

_____, Notary Public

Kalamazoo _____ County, Michigan.

My commission expires:

DAWN HEITKAMP
Notary Public, St. Joseph County, MI
My Commission Expires May 18, 2008

ACTING IN KALAMAZOO COUNTY