UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | |
|---|---|
| JANE Z. CAO, as personal representative of the Estate of XIANQING CAO, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) Case No. 1:03-cv-289 |
| v. | )<br>) Honorable Robert Holmes Bell |
| U.S. SECRET SERVICE, et al., | )<br>)<br>) **MEMORANDUM OPINION** |
| Defendants. | )<br>) |

Plaintiff Jane Z. Cao filed this lawsuit on April 30, 2003, purporting to bring the action *in pro per* as personal representative of the Estate of Xianqing Cao and on her own behalf. Xianqing Cao died on May 2, 2001, after a gun battle with police. Plaintiff contends that Mr. Cao's death resulted from a global conspiracy spanning a period of years and involving numerous individuals and foreign countries. Plaintiff's complaint consists of 487 paragraphs covering 114 pages, to which plaintiff has incorporated or appended numerous photographs, documents and official records. On March 22, 2004, the court issued a forty-seven-page opinion and accompanying order granting the motions to dismiss made by the majority of the defendants named in this lawsuit. (docket #'s 54, 55). Plaintiff pursued a premature appeal of the court's order. The Court of Appeals dismissed plaintiff's appeal for lack of jurisdiction. (docket # 86).

The matter is now before the court on motions to dismiss by the six remaining defendants. (docket #'s 79, 82). These defendants are divided into one of two groups. The first

group (collectively referred to herein as the school defendants) consists of Cheryl Carlson, a third grade teacher at Amberly Elementary School, located in Portage, Michigan, and Beth Dawson, the school's vice principal. Plaintiff's claims against these defendants stem from their roles in reporting a case of suspected sexual abuse of plaintiff's eight-year-old daughter by Xianqing Cao, her stepfather. The second group of defendants (collectively referred to herein as the FIA defendants) consists of the Kalamazoo County Family Independence Agency, and its employees Nicole Erickson, Heather Hain, and Don Smith. Plaintiff's claims against these defendants are based on the investigation conducted by Hain and Erickson under Smith's supervision of the report of suspected child abuse by Xianqing Cao, and the subsequent temporary removal of the Cao children from their residence pursuant to a court order. On June 21, 2004, the court issued an order (docket # 85) advising plaintiff of her opportunity to submit a briefs in opposition to defendants' motions within 28 days. Plaintiff elected not to file a response to the defendants' motions, and the time period within which to do so has long since passed. Upon review, defendants' motions will be granted and plaintiff's complaint against the six remaining defendants will be dismissed.

## Applicable Standards

Under Rule 12(b)(6), a complaint may be dismissed only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *See Ludwig v. Board of Trustees*, 123 F.3d 404, 408 (6th Cir. 1997); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The court must construe the complaint in the light most favorable to plaintiff, accept all factual allegations as true, and determine whether it is established beyond a doubt that the plaintiff can prove no set of facts in support of her claim that

would entitle her to relief. *See Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003); *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003).  While the standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Perry v. American Tobacco Co.*, 324 F.3d 845, 848 (6th Cir. 2003).  Courts are not required to conjure up unpleaded allegations. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Hall v. Beast*, No. 03-6447, 2004 WL 2320347, at * 2 (6th Cir. Sept. 20, 2004);  *Perry v. United Parcel Servs.*, No. 03-5861, 2004 WL 193203, at * 1 (6th Cir.), *cert. denied*, No. 03-10488, 2004 WL 2153079 (U.S. Oct. 4, 2004).  The court need not accept as true legal conclusions or unwarranted factual inferences. *See Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003); *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003) (quoting *Morgan,* 829 F.2d at 12); *see also Friedler v. Equitable Life Assurance Soc'y*, No. 02-3800, 2003 WL 23172051, at * 2 (6th Cir. Dec. 24, 2003). *Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972).  However, even the lenient treatment generally given *pro se* pleadings has its limits. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).  "In practice, a '. . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under <u>some</u> viable legal theory.'" *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993); *see Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003); *see also Borkins v. United States Postal Serv. Employees*, No. 02-2373, 2004 WL 886970, at * 3 (6th Cir. Apr. 23, 2004); *Abner v. Hope*, No. 03-1507, 2004 WL 603920, at * 1 (6th Cir. Mar. 23, 2004); *Gilmore v. Corrections Corp. of Am.*, No. 03-5836, 2004 WL 237417, at * 2 (6th Cir. Feb. 6, 2004).

Plaintiff elected to attach exhibits in support of her complaint. Those exhibits have been considered by the court in evaluating defendants' motion to dismiss, but have not converted the defendants' motions to dismiss into motions for summary judgment. *See* FED. R. CIV. P. 10(c); *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) ("'In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'") (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)); *see also Easy Way, Inc. v. Transport Int'l Pool, Inc.*, No. 01-2411, 2003 WL 21259677, at * 2 (6th Cir. May 27, 2003); *Backer v. Manning Family Trust (In re Backer)*, No. 01-5312, 2002 WL 31388769, at * 7-8 (6th Cir. Oct. 22, 2002); *Thomas v. Publishers Clearing House, Inc.*, No. 00-3948, 2002 WL 193935, at * 2 (6th Cir. Feb. 5, 2002).

### **Plaintiff's Allegations Against Defendants**

Plaintiff's complaint consists of more than one hundred paragraphs, covers in excess of one hundred pages, and incorporates numerous documents. Plaintiff's complaint asserts that a global conspiracy spanning a period of years and involving numerous individuals and foreign countries resulted in Xianqing Cao's May 2, 2001 execution by police officers from the Portage Police Department, followed by a massive conspiracy to cover up the murder. The court hereby incorporates by reference pages 6 through 18 of its March 22, 2004 opinion, discussing such allegations at length. (Op. at 6-18, docket # 54). Plaintiff's allegations against the school and FIA defendants are summarized as follows.

Report of Sexual Abuse by Mr. Cao

Plaintiff alleges that on or about May 2, 2001, defendant Beth Dawson played a sexual abuse prevention videotape for her third grade class entitled "It's Okay to Tell." After viewing this movie, plaintiff's daughter indicated to Ms. Dawson that her stepfather, Xianqing Cao, had touched her in inappropriate places. (Complaint, ¶¶ 210-13).[1]  Plaintiff does not dispute that Xianqing Cao had been involved in touching his stepdaughter's vaginal area, but contends that Xianqing Cao had done it for medical reasons, at plaintiff's request, while plaintiff had been away at work. (¶ 180-82).

Upon receiving her student's report of inappropriate touching of the student's vaginal area by her stepfather, Ms. Dawson immediately brought the girl to the office of Vice-Principal Cheryl Carlson. (¶ 214). Ms. Carlson gave the child a stuffed bear and asked her where she had been touched. The child responded by pointing to the vaginal area. (¶ 216). Ms. Carlson prepared a written report of the incident of suspected child abuse and faxed it to the Kalamazoo County Family Independence Agency. Ms. Carlson's report indicated that Xianqing Cao's sexual abuse may have involved not only the reporting eight-year-old student at Amberly Elementary, but also her eleven-year-old sister. (¶¶ 216-17). Plaintiff complains that Ms. Carlson's written report faxed to the Kalamazoo County Family Independence Agency erroneously identified the title of the sexual abuse prevention videotape her daughter had been shown as "Yes, You Can Say No" (¶ 217), rather than the tape "It's Okay to Tell."  Plaintiff alleges that Ms. Dawson should have shown her class the former sexual abuse prevention videotape rather than the latter. (¶¶ 210, 211).

---

[1] Paragraph references throughout this memorandum opinion are references to plaintiff's complaint.

Don Smith, a supervisor at the Kalamazoo County Family Independence Agency, assigned FIA Specialists Nicole Erickson and Heather Hain to investigate this report of suspected child abuse by Xianqing Cao. (¶ 218). Erickson and Hain arrived at Amberly Elementary School and interviewed the child in Vice-Principal Carlson's office. (¶¶ 225-231). Erickson, Hain, and Carlson were present during the interview. Ms. Carlson asked the child where her stepfather had touched her. The child used a stuffed bear that Carlson had provided to demonstrate that Xianqing Cao had touched her "in between [her] legs on the front." (¶ 227). Plaintiff complains that Vice-Principal Carlson was not a "professional psychologist" and that she used a "non-human prop" during this interview. (¶¶ 216, 226-30). Ms. Erickson stepped out of the vice principal's office and contacted Mr. Smith. Smith indicated that Hain and Erickson should also interview the eleven-year-old daughter. At approximately 4:00 p.m. on May 2, 2001, Detective Kozminski arrived at Amberly Elementary and met Hain and Erickson. Hain and Erickson discussed with Detective Kozminski the information they had obtained through interviews, and provided Kozminski with a copy of the written report of suspected child abuse by Xianqing Cao. The two social workers followed Detective Kozminski to the Cao residence. (¶¶ 232-37).

<u>Contact with Mr. Cao at his Residence and the Shooting Resulting in his Death</u>

When Kozminski, Erickson, and Hain arrived at the Cao residence, they found Xianqing Cao and his eleven-year-old stepdaughter at home. (¶¶ 237-245). Detective Kozminski stayed indoors with Mr. Cao. Erickson and Hain interviewed Mr. Cao's eleven-year-old stepdaughter outdoors. Mr. Cao contacted his wife at work by telephone. Detective Kozminski spoke with plaintiff and asked her to come home. Mrs. Cao responded that she would and arrived

at the Cao residence shortly thereafter.  Plaintiff alleges that when she arrived, Mr. Cao was indoors with Detective Kozminski and her daughter was outdoors with Erickson and Hain.  Based on the responses provided by the eleven-year-old stepdaughter, Erickson and Hain determined that it would be appropriate to seek authorization for the temporary removal of the children from the residence. They contacted defendant Smith and advised him of the status of the investigation.  (¶ 260). Plaintiff's complaint quotes an excerpt plaintiff selected from Ms. Erickson's report regarding Complaint # 01-10035:

> Both Ms. Hain and myself interviewed (11-Year-Old-Daughter- *name omitted*) in the back yard under the tree while sitting on the ground.  After several minutes it was determined that we had enough information to contact a Supervisor to inform that we would be doing a removal.

(¶ 260).

After the eleven-year-old girl went back indoors, Hain and Erickson began interviewing plaintiff outdoors behind the Cao residence.  Ms. Hain advised plaintiff that they had received reports that Mr. Cao had, on more than one occasion, touched one or more of his stepchildren in inappropriate areas while Mrs. Cao had been away from the residence at work. Plaintiff responded that she had never observed Mr. Cao involved in any inappropriate touching of the girls during the four years he had been assisting her in raising the children.  Plaintiff related that her eight-year-old daughter had a history of urinary tract infections and that approximately a month earlier, plaintiff had called Xianqing Cao from work and asked him to apply medicine to his stepdaughter.  (¶¶ 267-77).

Ms. Erickson left the Cao residence and drove back to Amberly Elementary School to pick up the eight-year-old child.  While on her way to the school, Ms. Erickson contacted the

Kalamazoo County Circuit Court and obtained a court order through the Juvenile Court's on-call referee authorizing the temporary removal of the four children from the Cao residence. Paragraphs 283 and 284 of plaintiff's complaint allege as follows:

> 283. Erickson drove to Amberly Elementary to pick[] up the 8-Year[]-Old-Daughter from the school. In her statement in the Kalamazoo County Sheriff's Department Complaint Report Complaint # 01-10035 Erickson stated, "While on the way to school, this worker made contact with Don Smith and Don Smith suggested to contact the Referee on-call for the authorization."
>
> 284. In page 6 of Hain's Investigation Report dated May 17, 2001, Hain stated, "At approximately 5:45 PM CPS Worker Nicole Erickson made a phone call to Anne Harrison at the Juvenile Court who was the On-call Referee. Ann Harrison gave permission for placement on all four children."

(¶¶ 283-84). Plaintiff complains that when she subsequently requested a copy of the order, the Kalamazoo County Circuit Court provided her with a copy of an order issued by Referee Scott Ryder on May 3, 2001, following a hearing before Referee Ryder. (¶ 284).

Ms. Erickson returned to the Cao residence. Erickson advised Mrs. Cao that the four children would be removed from the home pursuant to a court order of removal. Erickson indicated that Mrs. Cao could go to court the next day and ask the court to return custody of the children. (¶¶ 292-97). When Mrs. Cao advised Xianqing Cao that the four children were to be removed, Mr. Cao insisted that removal was not acceptable, and he apparently believed that if the children were taken away, he would never see them again. (¶ 299). Mr. Cao became increasingly agitated during the process of packing for the removal of the children. Mr. Cao had recently been diagnosed as having a "Psychotic Disorder NOS" in connection with an examination to determine his competency to stand trial on firearms charges in Washington, D.C. (¶ 142). Mr. Cao was then on probation from a 2001 criminal conviction on those charges. (¶ 143-44). Detective Kozminski warned Mr. Cao that

he would be arrested if he interfered with the removal. (¶¶ 307-313). Mr. Cao's took the nine-month-old child from Erickson and carried the baby upstairs to the master bedroom. (¶¶ 315-17). Ms. Erickson then joined Hain and Detective Kozminski who were already outside the home. (¶¶ 304-18). Plaintiff remained upstairs in the master bedroom attending to "four scared and crying children." (¶¶ 324, 27).

Xianqing Cao went downstairs. (¶ 319). Mrs. Cao claims that when she went downstairs to retrieve a bottle for the baby, she heard Xianqing Cao state on the telephone, "They want to kill me because I know too many secrets." (¶¶ 328-330). Mrs. Cao then returned to the upstairs bedroom. (¶ 333).

Officers from the Portage Police Department arrived at the Cao residence at approximately 5:59 p.m. (¶ 334). Detective Kozminski and Ms. Erickson advised the officers that the Caos had locked them outside the Cao residence. Detective Kozminski determined that the situation required forceful entry to protect the children. (¶ 337). A gun battle erupted as the Officers Bogema and Burke attempted to gain entry through a rear door to the Cao residence. Officer Burke received multiple gunshot wounds. During his exchange of gunfire with police, Xianqing Cao was shot and killed. Plaintiff now contends that the shooting of Xianqing Cao was a "pre-planned plot." Plaintiff admits that she was upstairs and did not observe the shooting. (¶ 347). Plaintiff believes that, pursuant to a plan, Officer Bogema first shot Officer Burke in the leg. Wounded Officer Burke then entered the home and shot Xianqing Cao in the navel and leg. Plaintiff believes that Officer Burke then executed Xianqing Cao by shooting him in the head while Mr. Cao was on the kitchen floor. Plaintiff now believes that Mr. Cao was completely unarmed, and that all the physical evidence showing that Mr. Cao began shooting at police as they tried to enter the residence had been

planted to cover up Mr. Cao's murder. (¶¶ 350-63). After reviewing the evidence, the prosecutor disagreed, finding that the officers of the Portage Police Department had responded appropriately by using deadly force in response to the shots fired at them by Xianqing Cao.

State Court Child Custody Proceedings

On May 3, 2001, a hearing was held in the Family Division of the Kalamazoo County Circuit Court regarding the custody of the Cao children. (¶¶ 426-28). Defendant Erickson was one of the witnesses who testified at this hearing. At the conclusion of the hearing, Hearing Referee Ryder decided that the two youngest Cao children could be immediately returned to plaintiff. Obviously, the late Xianqing Cao was no longer present in the home. Referee Ryder did not return the two older girls to plaintiff's custody. Ryder determined that there was evidence that plaintiff had failed to protect the two older daughters. (¶¶ 427-28). On May 9, 2001, Ms. Hain filed a petition in the 9th District Court to terminate plaintiff's parental rights. On May 31, 2001, the referee conducted another hearing. Among the topics addressed at the hearing was a purported threat by plaintiff to shoot the eight-year-old daughter who had originally reported the sexual abuse by Mr. Cao. (¶ 461-62). There was also concern that plaintiff would not emotionally support her daughters who were suffering from post-trauma syndrome at that time, because plaintiff refused to acknowledge that they had been sexually abused. On June 21, 2001, plaintiff received a hearing before Judge Patricia N. Conlon. (¶ 466). Plaintiff alleges that two of her daughters were "seized" by order of Judge Conlon. (¶ 472). She alleges that on July 13, 2001, Judge Conlon ordered that the Cao children be returned to Mrs. Cao, apparently based on the State's failure to conduct a trial on the issue of placement within the time limits established by Michigan law. (¶¶ 470-81). Plaintiff

asserts that the children were "taken hostage" to cover up the murder of Xianqing Cao and the massive conspiracy surrounding it. (¶ 460)..

## Discussion

### I.   FIA Defendants' Motion to Dismiss

   A.   <u>Murder and Kidnaping Claims</u>

Plaintiff purports to bring "conspiracy to murder" and "kidnaping" claims against the FIA defendants for alleged violations of 18 U.S.C. §§ 1117, 1201. (Complaint, ¶¶ 483, 484). Such claims do not warrant further discussion because plaintiff lacks standing to initiate criminal charges, and the statutes plaintiff relies upon do not create private causes of action. (Op. at 31-32, docket # 54).

   B.   <u>Eleventh Amendment Immunity</u>

Eleventh Amendment immunity bars plaintiff's claims against the Kalamazoo County Family Independence Agency and against defendants Smith, Hain, and Erickson in their official capacities. The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The State of Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir.), *cert. denied*, 125 S. Ct. 157 (2004); *Abick v. Michigan*, 803 F.3d 874, 877 (6th Cir. 1986); *see also Hill v. Michigan*, No. 02-2320, 2003 WL 21005236, at * 1 (6th Cir. May 2, 2003), *cert. denied*, 124 S. Ct. 1880 (2004). The Family Independence Agency is a department of Michigan government. MICH. COMP. LAWS § 400.1. The Kalamazoo County Family Independence

Agency is a local division of this state agency, and its employees are state employees. *See Lintz v. Skipski*, 807 F. Supp.1299, 1303 (W.D. Mich. 1992); *see also Thomas v. Michigan Family Independence Agency*, No. 02-2230, 2003 WL 21456266, at * 1 (6th Cir. June 19, 2003). The Sixth Circuit recently emphasized that, "the most important factor bearing on the Eleventh Amendment question is who would pay a judgment against the entity being sued." *S. J. v. Hamilton County, Ohio*, 374 F.3d 416, 420 (6th Cir. 2004); *see Cash v. Hamilton County Dep't of Adult Probation*, No. 03-3916, ___ F.3d ___, 2004 WL 2566077, at * 6 (6th Cir. Nov. 12, 2004). Any judgment against the Kalamazoo County Family Independence Agency would be paid from the state treasury. MICH. COMP. LAWS § 18.1396; *see Parker v. State*, Nos. 234828, 234829, 234830, 2004 WL 435395, at * 1 (Mich. Ct. App. May 9, 2004) (affirming judgment of the Michigan Court of Claims); *Pope v. Family Independence Agency*, No. 205898, 1999 WL 33437824 (Mich. Ct. App. Aug. 17, 1999)(same). Plaintiff sued defendant Smith only in his "official capacity as a children's protective services supervisor of the Kalamazoo County Family Independence Agency." (Complaint, p.1). Plaintiff sued defendants Hain and Erickson in their individual and official capacities. A suit against state officers in their official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Ernst v. Roberts*, 379 F.3d 373, 380 n.10 (6th Cir. 2004). Plaintiff's claims against defendants Hain, Erickson, and Smith in their official capacities are barred by the Eleventh Amendment.

Plaintiff's claims against the Kalamazoo County Family Independence Agency and defendants in their official capacities fail on a separate and independent ground. States, their departments, and "officials acting in their official capacities" are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.

C.    Absolute and Qualified Immunity

Defendants Hain and Erickson are entitled to judgment in their favor as a matter of law on plaintiff's claims against them on the basis of absolute and qualified immunity. Plaintiff's complaint reflects her disagreement with the actions taken by defendants Erickson and Hain in connection with state-court proceedings regarding the Cao children.[2] Defendants are absolutely immune with respect to actions undertaken in execution of court orders regarding custody of the Cao children. They are likewise immune for actions taken in initiating judicial proceedings against those suspected of child abuse. *See Rippy v. Hattaway*, 270 F.3d 416, 421 (6th Cir. 2001); *Achterhof v. Selvaggio*, 886 F.3d 826, 830 (6th Cir. 1989). They are absolutely immune with regard to their actions in obtaining and assisting in the execution of the court order for temporary removal of the children. *See Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758 (9th Cir. 1987) (child protective services worker entitled to absolute immunity for obtaining and executing *ex parte* order directing that child be placed into temporary state custody); *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984) (state employees responsible for the prosecution of child neglect and delinquency petitions in the Michigan courts were entitled to absolute immunity); *see also Smith v. City of Bad Axe*, No. 94-1783, 1996 WL 23219, at * 1 (6th Cir. Jan. 22, 1996) (citing *Coverdell* with favor and holding that a social worker and police officer assisting in removal of Smith from her

---

[2] Plaintiff also purports to bring an claims against defendants Erickson and Hain for a violation of 42 U.S.C. § 1981. (Complaint ¶ 485). Section 1981 states, "All persons within the jurisdiction of the United States shall have the same right in every state and Territory to make and enforce contracts, to sue, be parties, or give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other." 18 U.S.C. § 1981(a); *see Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003). Plaintiff has not alleged facts supporting any section 1981 claim against defendants Hain or Erickson.

home and returning her to a nursing home against her will pursuant to a court order were entitled to immunity). Defendants are absolutely immune with regard to testimony offered during state court proceedings. *See Brisco v. LaHue,* 460 U.S. 325, 342-45 (1983); *Hinchman v. Moore*, 312 F.3d 198, 205 (6th Cir. 2002); *Alioto v. City of Shively*, 835 F.2d 1173, 1174 (6th Cir. 1987).³

Defendants Hain and Erickson are not entitled to absolute immunity with regard to the investigation conducted before obtaining court authorization for removal of the children. *See Rippy*, 270 F.3d at 421; *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000); *Achterhof*, 886 F.2d at 830; *see also Meyers v. Franklin County Court of Common Pleas*, No. 02-3363, 2003 WL 22718238, at * 4 (6th Cir. Nov. 17, 2003); *Vermeesch v. Hall*, No. 98-cv-74093, 2000 WL 654953, at * 5 (E.D. Mich. Apr. 24, 2000). Defendants Hain and Erickson, however, are certainly entitled

---

³Plaintiff does not appear to be attempting to assert any state-law claims against defendants, but it is worth noting that if she had, governmental immunity would bar state law tort claims against the Kalamazoo County Family Independence Agency and its employees. *See* MICH. COMP. LAWS § 691.1407; *see also Mark v. Detroit*, 649 N.W.2d 47, 52 (Mich. 2002); *see also Parker v. State*, Nos. 243828, 243829, 243830, 2004 WL 435395, at * 1 (Mich. Ct. App. Mar. 9, 2004); *Jaffee v. Bierma*, Nos. 239636, 239637, 2003 WL 22399523, at * 2 (Mich. Ct. App. Oct. 21, 2003) ("'[S]ocial workers' are entitled to absolute immunity for 'initiating and monitoring child placement proceedings' in order to assure that the 'case workers' can make discretionary decisions they believe are in the children's best interests without fear of litigation.") (citing *Spikes v. Banks*, 586 N.W.2d 106, 109 (Mich. Ct. App. 1998) and *Martin v. Children's Aid Soc'y*, 544 N.W.2d 651, 654 (Mich. Ct. App. 1996)). Michigan provides absolute immunity to social workers on state-law claims by applying a functional analysis. *See Richmond v. Catholic Social Servs.*, No. 246833, 2004 WL 1416266, at * 2-3 (Mich. Ct. App. June 24, 2001). Michigan also provides defendants with broad immunity under its Child Protection Act. *See* MICH. COMP. LAWS § 722.625. State law recognizes that witness testimony is absolutely privileged. Witnesses are an integral part of the judicial process and are "wholly immune from liability for the consequences of their testimony or related evaluations. . . . Witness immunity is also grounded in the need of the judicial system for testimony from witnesses who, taking their oaths, are free of concern that they themselves will be targeted by the loser for further litigation. Absent perjury of a character requiring action by the prosecuting attorney, the testimony of a witness is to be weighed by the factfinder in the matter at the bar, not a subsequent jury summoned to determine whether the first lawsuit was tainted." *Maiden v. Rozwood*, 597 N.W.2d 817, 830 (Mich. 1999).

to qualified immunity on plaintiff's claims for monetary damages against them in their individual capacities. In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. The standard to be applied in deciding a claim of qualified immunity is one of objective reasonableness. *Id.* The question whether qualified immunity attaches to an official's actions is a purely legal issue for the trial court. *See Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004); *Summar v. Bennett*, 157 F.3d 1054, 1057 (6th Cir. 1998); *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001), emphasized that the defense of qualified immunity must be addressed in proper sequence.

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is an entitlement not to stand trial or face other burdens of litigation. The privilege is *an immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. As a result, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.

533 U.S. at 200-01 (citations omitted). The initial inquiry must be whether the plaintiff has alleged and supported with evidence facts showing that the officers' conduct violated a constitutional right. 533 U.S. at 201; *Flaskamp v. Dearborn Pub. Sch.*, 385 F.3d 935, 940-41 (6th Cir. 2004); *Summers*, 368 F.3d at 888; *Akers v. McGinnis*, 352 F.3d 1030, 1042 (6th Cir. 2004). If the first question is answered in the affirmative, the court must then determine whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his

behavior violated that right. 533 U.S. at 201. "A constitutional right must be clearly established in a particularized sense. 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Rippy v. Hattaway*, 270 F.3d 416, 424 (6th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"It is crucial, the Supreme Court has noted, that the second inquiry 'be undertaken in light of the specific context of the case, not as a broad general proposition.' Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201); *see Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003); *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002). The court, of course, need not find a case in which the very action in question has previously been held unlawful, but in light of pre-existing law, the unlawfulness must be apparent. *See Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Risbridger v. Connelly*, 273 F.3d at 569; *Comstock*, 273 F.3d at 702. However, "'qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Rippy v. Hattaway*, 270 F.3d at 424 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). The court must focus on whether, at the time defendant acted, the right asserted was "clearly established" by the decisions of the Supreme Court or the Sixth Circuit. *See Reynolds v. City of Anchorage*, 379 F.3d 358, 366 (6th Cir. 2004); *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002); *Comstock v. McCrary*, 273 F.3d at 702; *Walton v. City of Southfield*, 995 F.2d 1331, 1335-36 (6th Cir. 1993). "If reasonable officials could disagree on the issue, immunity should be

recognized." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999); *see Akers*, 352 F.3d at 1042. "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow to raise a question about), the conclusion for every-like situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Saylor v. Board of Educ.*, 118 F.3d 507, 514 (6th Cir. 1997); *see Gragg*, 289 F.3d at 964. "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key* 179 F.3d at 1000 (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)).

Plaintiff admits that Hain and Erickson interviewed the eight-year-old child who initially reported inappropriate sexual contact by her stepfather. It is undisputed that the child indicated that her stepfather had touched her in the area between her legs in front. The child had made a similar report to her teacher. These consistent statements resulted in the vice-principal's written report of suspected child abuse. Defendants Hain and Erickson questioned the eleven-year-old stepdaughter. The older daughter indicated that inappropriate touching by Mr. Cao occurred when plaintiff was away from the home at work. Before the children were removed from the home, Erickson and Hain questioned plaintiff. She indicated that she had not observed Mr. Cao engage in inappropriate touching of the children during their four years together. Plaintiff was unsuccessful in persuading the two social workers that Mr. Cao's touching of the eight-year-old's vaginal area had been for the purpose of medical treatment. Plaintiff was admittedly not present when this physical contact by Xianqing Cao had occurred. Social workers are not required to believe every possibly "innocent" explanation proffered for otherwise criminal sexual conduct.

Plaintiff has not alleged facts showing that the conduct of defendants Hain and Erickson violated any of her constitutional rights. 533 U.S. at 201. The facts summarized above do

-17-

not disclose a violation of procedural or substantive due process, nor do they support a claim in plaintiff's favor on any other constitutional theory. Furthermore, the court has been unable to locate any case that would clearly establish in any particularized sense the constitutional rights plaintiff believes defendants Erickson and Hain violated. Defendants Hain and Erickson are entitled to judgment in their favor as a matter of law on plaintiff's claims for monetary damages against them in their individual capacities on the basis of qualified immunity.

## II.     School Defendants' Motion to Dismiss

Plaintiff's claims against defendants Dawson and Carlson require little discussion. Plaintiff's complaint fails to state any federal claim[4] against these defendants, and even assuming that it did, defendants would be entitled to judgment in their favor on the alternative basis of qualified immunity. An eight-year old student reported what appeared to be an instance of sexual abuse committed on her by her stepfather. These defendants, pursuant to a duty imposed by Michigan's Child Protection Act, MICH. COMP. LAWS § 722.623, determined that there was "reasonable cause to suspect child abuse or neglect," and immediately contacted the proper authorities. Plaintiff complains that Vice-Principal Carlson was not a "professional psychologist" and that she used a "non-human prop," specifically a teddy bear, to allow the eight-year old to demonstrate where her stepfather had been touching her. (Complaint, ¶¶ 216, 225-27). Such

---

[4] As previously noted, plaintiff does not appear to be asserting any state-law claims against the remaining defendants. However, to the extent that she may have been attempting to do so based upon Ms. Dawson's purportedly showing the wrong sex abuse prevention tape to her class, or an error in Vice-Principal Carlson's written report of suspected child abuse with regard to the title of the sex abuse prevention tape actually shown to her daughter, defendants would undoubtedly be entitled to state-law immunity under Michigan's Child Protection Act. MICH. COMP. LAWS § 722.625.

criticisms do not state any claim of constitutional dimension. Use of props to allow young children to express acts committed upon them by adults for which they may lack an adequate vocabulary to describe is certainly commonplace. Plaintiff admits that Xianqing Cao was involved in touching his stepdaughter's vaginal area. Plaintiff's criticism that Vice Principal Carlson was not a "professional psychologist" is inconsequential. Plaintiff's complaint fails to state any federal claim against these defendants.

Plaintiff has not alleged any facts establishing that these defendants violated any of her constitutional rights. *See Tenenbaum v. Williams*, 193 F.3d 581, 595-97 (2d Cir. 1999); *Wojcik v. Town of North Smithfield*, 76 F.3d 1, 3 (1st Cir. 1996); *Picarella v. Terrizzi*, 893 F. Supp. 1292, 1300-01 (M.D. Pa. 1995). Plaintiff has not established that defendants' actions violated any clearly established constitutional rights. Defendants Dawson and Carlson were performing a discretionary function when they determined that there was "reasonable cause to suspect child abuse or neglect," such that their reporting obligation was triggered under Michigan's Child Protection Act. MICH. COMP. LAWS § 722.623(1)(a). Defendants are therefore entitled to judgment in their favor as a matter of law on the alternative basis of qualified immunity.

### Conclusion

For the reasons set forth herein, defendants' motions (docket #'s 79, 82) will be granted. Plaintiff's complaint will be dismissed for failure to state a claim upon which relief can be granted.

Date:    November 16, 2004              /s/ Robert Holmes Bell
                                         ROBERT HOLMES BELL
                                         CHIEF UNITED STATES DISTRICT JUDGE